IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JOEY HESTER and KACIE MCELROY, ) Individually and as Personal Representatives ) of the Estate of THOMAS NEWMAN ) MCELROY, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> BLYTHE CONSTRUCTION, INC., ZACHRY ) CONSTRUCTION, CORP., JOHNSON, ) MIRMIRAN and THOMPSON, INC., COWAN ) SYSTEMS, LLC; and JOHN ALLEN FERGUSON ) <br> ) <br> Defendants. ) <br> ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | COMPLAINT AND JURY DEMAND |

COME NOW the Plaintiff's, Joey Hester and Kacie McElroy, individually and as Personal Representatives of the Estate of Thomas Newman McElroy, by and through their attorneys, to show the Court the following case:

**JURISDICTION AND VENUE**

1. This case arises out of a July 15, 2021, multi-vehicle crash occurring on Interstate Highway 85, near Mile Marker 90, in Cherokee County, South Carolina.

2. The Plaintiffs, Joey Lynn Hester and Kacie Ann McElroy, are residents of the State of South Carolina and are the duly appointed joint personal representatives of Thomas Newman McElroy, deceased, and are the adult daughters of the deceased who was the passenger of a 2007 Chrysler Minivan involved in the crash described below.

3. The Defendant Blythe Construction, Inc. (hereinafter "Blythe") is a corporation

organized and existing under the laws of the State of North Carolina and is subject to jurisdiction in the State of South Carolina because it transacts business in this State and contracts to supply services in this State.

4.    The Defendant Zachry Construction Corp. (hereinafter Zachry) is a corporation organized and existing under the laws of the State of Delaware and is subject to jurisdiction in the State of South Carolina because it transacts business in this State and contracts to supply services in this State.

5.    The Defendant Johnson, Mirmiran and Thompson, Inc. (hereinafter JMT) is a corporation organized and existing under the laws of the State of Maryland and is subject to jurisdiction in the State of South Carolina because it transacts business in this State and contracts to supply services in this State.

6.    The Defendant Cowan Systems LLC (hereinafter Cowan) is a limited liability corporation organized and existing under the laws of the State of Maryland.  It is a wholly owned subsidiary of Cowan Transport Holdings, LLC, a Maryland limited liability company. The members of Cowan Transport Holdings, LLC, are and their citizenships are The Evans Trust (a Maryland Trust), Joseph Cowan, Trustee, The Colhoun Trust (a Maryland Trust), Joseph Cowan, Trustee, Joseph Cowan, individually, Kelly Colhoun, Johanna Evans, Dennis Morgan, Richard Wagner, Dan Evans, David Bafford, Herman Funk, Jr., Stephen Wells, James Mechlinski, Thomas Alford, Dan Colhoun, Richard Cichon and Brett Turner. Mssrs. Cichon and Turner are Pennsylvania citizens; all other individuals are Maryland citizens. Cowan is subject to jurisdiction in the State of South Carolina by virtue of its liability for the commission of a tortious act by its agent and servant within the State and by virtue of its regular operation of commercial vehicles on the roads and highways of the State.

7. The Defendant John Allen Ferguson is a citizen and resident of the State of Florida and is subject to jurisdiction by virtue of the commission of a tortious act within the State of South Carolina.

8. Jurisdiction in this Court proper under 28 USC §1332 because the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00.

9. Venue is proper in South Carolina and in this Division because a substantial part of the events and omissions giving rise to this claim occurred.

## DEFENDANTS' ROLES IN THE JULY 15, 2021 CRASH

10. On November 15, 2018, the Defendants Blythe and Zachry entered into a contract with the South Carolina Department of Transportation. A copy of the contract is attached hereto as Exhibit A and incorporated herein by reference. The contract price is Four Hundred Thirty-Five Million, Five Hundred Seventy-Six Thousand, Nine Hundred Seven Dollars ($435,576,907.00).

11. The contract calls for Blythe and Zachry, as joint venturers, to furnish all services, labor, materials, equipment, supplies, tools, transportation and coordination required to perform all design, preliminary engineering, surveying, geotechnical services, scheduling, permitting, right of way services, procurement, construction, utility coordination, demolition, material disposal, and any other services necessary to provide for the reconstruction and widening of Interstate 85 from approximate Mile Marker 77 to approximate Mile Marker 98 in Cherokee and Spartanburg Counties.

12. The contract obligated Blythe and Zachry to determine and comply with all applicable federal, state, and local laws in connection with the contracted services.

13. The contract obligated Blythe and Zachry to comply, and to assure compliance by any subcontractor, with the *Rule on Work Zone Safety and Mobility: The Policy for South Carolina*

*Department of Transportation and Rule on Work Zone Safety and Mobility: Implementation, Maintenance, and Safety Guidelines.*

14.    The contract further obligated Blythe and Zachry to design, develop, implement, and maintain a Transportation Management Plan and a Temporary Traffic Control Plan, an essential part of which was traffic control and safety.

15.    In furtherance of its contractual obligations, the Blythe/Zachry joint venture engaged the Defendant JMT to prepare the Traffic Management Plan, a copy of which is attached as Exhibit B and incorporated herein by reference.

16.    At all times material hereto, Defendant Cowan was a for hire motor carrier operating under the authority of the United States Department of Transportation ("USDOT").

17.    In applying for and maintaining operating authority as a motor carrier, Defendant Cowan certified to the USDOT that it would:

a.    Have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

b.    Have in place a driver safety training/orientation program;

c.    Be familiar with DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements (49 CFR 391);

d.    Have in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance; and,

e.    Comply with all pertinent Federal, State, local and tribal statutory and regulatory requirements when operating within the United States.

18.     At the time of the crash, Defendant Cowan was the registered owner or lessor of the 2019 Peterbilt Tractor with VIN# 1XPCDP9X0KD226589 bearing license plate #879F99, which was involved in this crash.

19.     At all relevant times, the Cowan vehicle was a commercial motor vehicle as that term is defined in 2012 South Carolina Code of Laws §56-1-230, and it was being operated under the control and USDOT authority of Cowan.

20.     At all relevant times, Defendant Truck Driver was a Class A licensed commercial vehicle operator driving the truck in the course and scope of his agency with Cowan.

<b><u>FACTS COMMON TO ALL CAUSES OF ACTION</u></b>

21.     In furtherance of the contract, Blythe/Zachry and JMT chose to control traffic in the construction area by funneling southbound through traffic into the leftmost lane on I-85 South. They attempted to accomplish this by creating a "chute," comprised of concrete barriers, commonly known as Jersey barriers, on both sides of the leftmost lane, effectively hemming vehicles into a space with no room to maneuver left or right within the roadway.

22.     Blythe/Zachry and JMT further attempted to control traffic by using signage, restricting the use of the "chute" to cars and light trucks only, and by prohibiting commercial vehicles from using the "chute."

23.     The "chute" begins between Mile Markers 91 and 90 and extends for approximately 10 miles.

24.     At approximately mile marker 92, two signs overhang the roadway, the sign over the leftmost lane reading "I-85 South, No Exit 10 Miles" and the sign over the rightmost lane reading "I-85 South Truck Lane."

25.    Further south, two signs overhang the roadway, the sign over the leftmost lane reading "I-85 South, Cars Only" and the sign over the rightmost lane reading "Local Exiting Traffic All Trucks."

26.    Approximately 180 feet south from the second pair of overhanging signs, divided lane signs such as the one below are placed on both sides of the road.



27.    Approximately 1200 feet beyond the divided lane signs, the "chute" begins.

28.    The speed limit in the "chute" at the time of the crash was 60 miles per hour.

29.    Prior to July 15, 2021, there had been approximately 200 vehicle crashes, including fatalities, in the "chute" since its inception.

30.    On July 15, 2021, Thomas Newman McElroy was driving his vehicle in a southerly direction on I-85, with his wife, Ruth Ann McElroy, as the passenger.

31.    At approximately Mile marker 90, southbound traffic came to a stop, and Thomas Newman McElroy, stopped his vehicle safely behind a line of traffic.

32.    The Defendant Ferguson, while acting in the course and scope of his employment by Cowan, was operating the tractor-trailer owned or leased by Cowan in a southerly direction.

33.    Ferguson failed to stop and crashed into the rear of the McElroy vehicle at approximately 60 miles per hour.

34.    The aftermath of the collision is shown in this photograph, a part of a video taken shortly after the crash.



35.    As a result of the crash, Thomas Newman McElroy suffered serious injuries, which eventually proved fatal.

36.    As a result of the configuration of the "chute," emergency personnel were unable to expeditiously extract Thomas Newman McElroy from the vehicle, thus preventing him from receiving immediate medical treatment.

37.    Each Defendant acted in a manner that either alone or combined with the actions of other Defendants' acts of negligence, directly and proximately caused the crash and the resulting injuries to the decedent.

## FOR A FIRST THEORY OF LIABILITY
## NEGLIGENCE OF BLYTHE/ZACHRY

The Plaintiffs incorporate herein by reference allegations in paragraphs 10 through 35.

38.    Blythe/Zachry and JMT were negligent, careless, and reckless in the following particulars:

a.    In constructing a work zone which increased the risk of collisions.

b.    In constructing a work zone with no ability for vehicles to maneuver to avoid collisions;

c.      In constructing a work zone configured in such a way as to make emergency extractions difficult or impossible;

d.      In failing to establish a safe speed limit in the "chute;"

e.      In failing to provide sufficient advanced warning to trucks in order that their drivers can timely and safely divert into the lane designated for truck operation.

f.      In failing to enforce the truck lane restrictions;

g.      In failing to take action, following the previous fatal collision in the "chute," to eliminate the hazard posed to motorists by the configuration of the roadway;

## FOR A SECOND THEORY OF LIABILITY
## NEGLIGENCE AGAINST COWAN

The Plaintiffs incorporate by reference the allegations in paragraphs 10 through 35.

38.      Cowan had a duty to ensure that its drivers and vehicles were reasonably safe and complied with all laws and industry standards concerning the safe operation and maintenance of commercial motor vehicles.

39.      Cowan breached the above-mentioned duties and was therefore negligent, careless and reckless in one or more of, but not limited to, the following ways:

a.      Failing to verify and ensure that Ferguson operated the truck in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles, in violation of 49 C.F.R. §392.1;

b.      Failing to properly train and instruct Ferguson and its drivers on defensive driving, safe driving, proper following distance and proper lookout in violation of 49 C.F.R. §383.111;

c.      Failing to properly supervise Ferguson and identify dangerous routes and driving behavior that could have been corrected to avoid this crash;

d.      Failing to properly inspect and maintain the truck in violation of 49 CFR §396.11and 49 CFR §396.1; and/or

e.      Knowingly failing to promote and enforce systems and procedures for the safe operation of motor vehicles and, thus, creating a zone and culture of risk that constituted a dangerous mode of operation reasonably anticipated to cause injury and/or death to the traveling public, including the Plaintiff;

40.     Cowan's negligent conduct also violated laws intended to protect and prevent crashes with drivers like Thomas Newman McElroy and his passenger and wife, Ruth Ann McElroy.

41.     Defendant Trucking Company's negligence combined and concurred with the negligence of the other Defendants to directly and proximately cause the Thomas Newman McElroy's damages.

## FOR A THIRD THEORY OF LIABILITY
## NEGLIGENCE OF FERGUSON

42.     Defendant Ferguson, while acting as the agent and servant of the Defendant Cowan, had a duty to operate the truck in a reasonably safe manner and to know of and abide by all laws and industry standards governing the safe operation and maintenance of commercial motor vehicles.

43.     Ferguson, as agent and servant of the Defendant Cowan, breached those duties and was negligent, careless, and reckless in one or more of, but not limited to, the following particulars:

a.      driving too fast for conditions;

b.      failing to keep a proper lookout;

c.      failing to apply brakes;

d.      failing to maintain a proper following distance in violation §316.0895(1);

e.      following within 300 feet of the Plaintiff in violation of §316.0895(2);

f.      driving the truck while distracted;

g.      driving the Truck while fatigued;

h.      failing to maintain control of the truck;

i.      failing to take appropriate evasive action;

j.      crashing into the Plaintiff's vehicle;

44.     Ferguson's negligence combined and concurred with the negligence of the other Defendants to directly and proximately cause Thomas Newman McElroy's damages.

## FOR A FIRST CAUSE OF ACTION
## WRONGFUL DEATH

45.     As a result of the injuries caused by the negligence of the Defendants, combining and concurring, Thomas Newman McElroy expired.

46.     As a direct and proximate result of the negligence and recklessness of the Defendants, combining and concurring, Thomas Newman McElroy's statutory beneficiaries have suffered and will in the future suffer:

a.      grief;

b.      sorrow;

c.      shock;

d.      wounded feelings;

e.      loss of companionship and society;

f.      loss of advice on family affairs;

g.      mental suffering;

h.      pecuniary damages.

## DEMAND FOR JURY TRIAL

Plaintiffs request this matter be tried by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs demand judgment against Defendants for actual and

punitive damages, the costs of this action, and such other and further relief as the Court may allow.


Respectfully submitted,
/s/ Francis Humphries, Jr.
Francis Humphries, Esq.  Bar No.: 12921
William H. Monckton, VI, Bar No.: 06647
J. Gregory Hembree, Bar No.: 6480
Monckton Hembree & Humphries
1300 Professional Dr., Ste 102
Myrtle Beach, SC 29577
843-946-6556 (P)
843-946-6996 (F)